Filed 10/10/14  P. v. Thieman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JAMIE A. THIEMAN,<br><br>     Defendant and Appellant. | F066072<br><br>(Super. Ct. No. BF142380A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael B. Lewis and Michael G. Bush, Judges.[†]

Carol Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Kane, Acting P.J., Poochigian, J., and Franson, J.

[†]     Judge Lewis denied appellant's suppression motion and Judge Bush sentenced appellant.

# PROCEDURAL SUMMARY

Appellant, Jamie A. Thieman, was charged in an information filed on July 2, 2012, with felony counts of selling, furnishing, or offering to transport methamphetamine (Health & Saf. Code, § 11379, subd. (a), count 1) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 2). Appellant was charged with misdemeanor counts of possession of narcotics paraphernalia (Health & Saf. Code, § 11364.1, count 3) and resisting, delaying, or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1), count 4).[1] The information alleged a prior serious felony conviction within the meaning of the three strikes law (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)) and three prior prison term enhancements.

The trial court denied appellant's suppression motion on August 6, 2012.

On August 17, 2012, appellant entered into a plea agreement. Appellant initialed and executed a felony advisement of rights, waiver, and plea form acknowledging and waiving his constitutional rights pursuant to *Boykin/Tahl*.[2] Under the terms of the agreement, appellant agreed to admit count 1 and the prior serious felony conviction. Appellant would receive the low term of two years, doubled to four years pursuant to the three strikes law.

Appellant pled no contest to count 1, transportation of methamphetamine, and admitted the prior serious felony conviction. The parties stipulated to a factual basis for the plea. The court granted the prosecutor's motion to dismiss the remaining allegations. On October 10, 2012, the trial court sentenced appellant to the low term of two years, doubled to four years pursuant to the three strikes law. The court granted custody credits for actual time in custody of 132 days plus an additional 132 days of conduct credits for

---

[1] Unless otherwise designated, all statutory references are to the Penal Code.

[2] *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122 (*Boykin/Tahl*).

total custody credits of 264 days.  The court imposed various fines, fees, and penalties, including a restitution fine of $240.

Appellate counsel has filed a brief seeking independent review of the case by this court pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

## FACTS

At the suppression motion, the parties stipulated that the search and seizure was conducted without a search warrant.[3]  On June 1, 2012, State Parole Agents Darrott Johnson and Chad Greenwood had a "hot sheet" from the Kern County Sheriff's Department with a list of stolen vehicles, wanted subjects, and missing persons.  They were patrolling the Oildale area of Kern County.  Johnson and Greenwood were looking for Alan Ladsky who was wanted on probable cause that he committed a rape and child molestation.

Ladsky frequented the Oildale area.  Ladsky's description was a white male, 38 years old, 240 pounds, five feet eleven inches tall, with short grayish hair and blue eyes.  Johnson and Greenwood were dressed in full tactical raid gear, consisting of a black raid vest with a badge, police placard on the front, and police parole placard on the back with white lettering.

Agent Johnson was in an unmarked blue Chevy Colorado truck.  The agents "initiated mobile surveillance" of Ladsky.  On their way to another location, Agent Vidales said he saw a subject who met Ladsky's description and he radioed Johnson.  Johnson saw appellant on a bicycle.  When appellant rode past Vidales, he apparently saw Vidales's patches and badges and fled on his bicycle in the opposite direction.  Johnson first saw appellant fleeing on the bicycle.

---

[3]     The facts are derived from the hearing on appellant's suppression motion.  There was also a preliminary hearing in appellant's case.  According to the testimony from the preliminary hearing, an eyeglass case was retrieved by State Parole Agent Vidales that contained a usable amount of methamphetamine and drug paraphernalia.

Appellant was riding erratically, cutting through streets, taking alleys, and riding in circles. Appellant was riding at a high speed and almost ran over a small child and made an abrupt turn in front of Greenwood. Appellant went into a north alley on Decatur Street behind an apartment complex. Appellant made an abrupt right turn and tried to ram his bicycle through a wooden fence. Appellant made it through the fence. Johnson stopped directly behind appellant as appellant was fleeing through a small patio area of an apartment complex. Johnson exited his vehicle and ran toward appellant.

Johnson announced who he was and told appellant to stop but appellant refused to stop. When Johnson contacted appellant, appellant was off of his bicycle attempting to jump over a fence. Johnson displayed his firearm and again ordered appellant to get off of the fence, but appellant refused to come down. Johnson announced that he was police and a parole agent. When appellant came down off of the fence, Johnson closed the distance between the two of them and used physical force to take appellant into custody. Appellant had a knife clipped to his right pant pocket. During the arrest, appellant removed an eyeglass case from his pocket and threw it over his head.

Johnson could not see appellant's face clearly because appellant was wearing a hat that was pulled down. Johnson could see that appellant had a shaved head from the hat line down. Johnson could not see the color of appellant's eyes. Johnson could tell appellant's height, size, and weight closely fit Ladsky's description. After receiving and waiving his *Miranda*[4] rights, appellant said he knew who the agents were when they started following him. Appellant said he ran because he had drugs and did not want to go to jail.

Greenwood also chased appellant on foot and shot appellant with a taser while appellant was still on the bicycle. One taser dart appeared to hit appellant but he pulled it out and continued riding. Greenwood was driving a blue, unmarked Dodge Durango.

---

**4**      *Miranda v. Arizona* (1966) 384 U.S. 436.

## APPELLATE COURT REVIEW

Appellant's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*Wende*, *supra*, 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on July 18, 2013, we invited appellant to submit additional briefing. To date, he has not done so.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.